**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
―――――――――――――――――――――――――――――――

**RHC OPERATING LLC,**

                        **Petitioner,**          **21-cv-10349 (JGK)**

        **- against -**                  **MEMORANDUM OPINION**
                                            **AND ORDER**
**NEW YORK HOTEL & MOTEL TRADES**
**COUNCIL, AFL-CIO,**

                        **Respondent.**
―――――――――――――――――――――――――――――――

**JOHN G. KOELTL, District Judge:**

    RHC Operating LLC ("RHC") brought this petition to vacate a labor arbitration award dated November 10, 2021 (Award No. 2021-84) ("the Award"). Respondent New York Hotel & Motel Trades Council, AFL-CIO ("the Union") brought a cross-petition to confirm the Award. For the reasons explained below, RHC's petition to vacate the Award is **denied** and the Union's petition to confirm the Award is **granted.**

                                **I.**

    The following facts are taken from the Petition (ECF No. 1), the Cross-Petition (ECF No. 23), the Award (ECF No. 7-2), and the supporting exhibits and declarations filed by the parties.

    RHC is the owner of the Roosevelt Hotel ("the Roosevelt" or "the Hotel") in New York City. Pet. ¶¶ 1, 5. The Hotel closed in December 2020 due to the financial impact of the COVID-19 pandemic. Id. ¶ 15. As of the date of RHC's Petition, the Hotel

                                1

remained closed to the public. Id. ¶ 23. The Union represents over 40,000 workers employed in the hotel, gaming, and hospitality industry in the greater New York City area, Northern and Central New Jersey and the New York State Capital District, including employees of the Roosevelt. Cross-Pet. ¶ 64. Terms and conditions of employment for workers represented by the Union in New York City are governed by the Industry-Wide Collective Bargaining Agreement ("IWA") between the Union and the Hotel Association of New York City, Inc. Pet. ¶ 7; Bokerman Decl., ECF No. 26 ¶ 3.

The IWA contains a broad arbitration provision. Article 26(A) provides in part:

> All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto. Any questions regarding arbitrability, substantive, procedural, or otherwise, regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article.

IWA, Art. 26(A), ECF No. 7-1. Two other articles of the IWA are at the center of the parties' dispute. Article 57 provides for severance payments to employees if a hotel is converted to residential use and employees suffer a permanent loss of employment due to such conversion. See id., Art. 57. As a

2

condition of receiving severance payments under Article 57, employees must release their rights under the IWA. See id. Article 59 provides that, if a hotel is sold or new management is retained, the new owner or operator must sign an assumption agreement committing to be bound by the IWA as a condition of the sale or management agreement. See id., Art. 59.

In September 2020, RHC provided the Union with notice of RHC's decision to close the Hotel. Pet. ¶ 15. The closure was publicly announced in October 2020. Id. Nearly all of the Hotel's 500 employees were laid off as a result of the closure, except for a limited number of essential security and maintenance employees. Id.

In October 2020, the Union sent the Hotel's management company, Interstate Hotels, LLC ("Interstate"), estimated calculations for severance payments under Articles 52 and 57 of the IWA. Id. ¶ 17. Article 52 provides for severance payments to employees in the event of termination resulting from a hotel's closure. See IWA, Art. 52. RHC has funded, and Interstate has paid, Article 52 severance to the employees who were laid off by the Hotel. Pet. ¶ 19. RHC objected, however, to the applicability of Article 57 to the Hotel's closure. Id. ¶ 18.

Beginning in or around October 2020, the Union requested information regarding: the closure and financial condition of the Hotel, the Hotel's ownership and control, a potential sale

3

or transfer of the Hotel, and potential alternate uses for the Hotel. Id. ¶ 20; Cross-Pet. ¶ 20. The Union's stated purpose for requesting this information was to engage in "effects" bargaining under the National Labor Relations Act ("NLRA") regarding potential future uses of the Roosevelt, to investigate affiliated entities, and to investigate potential claims under Article 57 and/or 59 of the IWA. Pet. ¶ 22. The Union requested this information in part because of contemporaneous news reports that the Roosevelt would be renovated and converted for residential and commercial use. Cross-Pet. ¶ 78. RHC objected to the Union's requests on the ground that they were premature because there was no pending dispute regarding a potential sale or transfer of the Hotel or any alternate uses. Pet. ¶ 21. RHC also objected on the ground that the Union had not alleged a violation of the IWA related to future uses, a potential sale, or transfer of the Hotel. Id. RHC advised the Union that it had no plans regarding the future of the Hotel. Id.

The Union initiated an arbitration proceeding before the Office of the Impartial Chairperson ("OIC") alleging that RHC failed to provide information in violation of the IWA and the NLRA. Id. ¶ 24. The Impartial Chairperson ("IC") held hearings in June and July 2021, and issued the Award on November 10, 2021. Id. ¶¶ 24, 30.

The IC ruled in favor of the Union, concluding that "the Hotel ownership did not act in good faith in response to the Union's legitimate requests for information and documents, as mandated by the IWA and the NLRA." Award, at 49. The IC found that RHC had ignored the IC's prior order and the IC's "repeated warnings" to comply fully with the Union's subpoenas and requests for information. Id. The IC highlighted the "egregious" fact that testimony of "the Hotel's ownership representatives proved the existence of documents (consultant report, minutes of Board of Directors, governmental reports and mortgage and loan documents) that were clearly responsive to the Union's Subpoenas and requests for information but were not turned over to the Union." Id. The IC concluded that RHC's failure to turn over responsive information was intentional and in violation of the IWA and the NLRA. See id. at 49–50.

Turning to the issue of remedy, the IC analogized to federal courts' power under Federal Rule of Civil Procedure 37 to impose sanctions, including a default judgment, against parties who engage in discovery abuse. Id. at 50 (citing S.E.C. v. Razmilovic, 738 F.3d 14 (2d Cir. 2013)). The IC noted that "arbitrators have the inherent power to penalize a party's refusal to provide requested information relevant to an issue in a case by drawing an adverse inference against the offending party on such issue." Id. In light of what the IC concluded was

5

RHC's willful refusal to turn over relevant documents, the IC
drew an adverse inference that the Hotel had violated Articles
57 and 59 of the IWA. See id. at 50-51. The IC ordered the Hotel
to pay "each bargaining unit employee the severance provided for
in Article 57 of the IWA. . . . in the form of a weekly bridge
severance payment in the manner permitted under IC
Award #2020-75." Id. at 50.[1] The Award stated that RHC's
"obligation to make these payments will cease upon the earlier
of an award from the [IC] that the Hotel has established to the
[IC's] satisfaction that it has fully complied with the requests
for information and submitted evidence to rebut the adverse
inference that it is has or is converting to residential use; or
the Hotel re-opens for transient use which would rebut the
same." Id. at 50-51. With respect to Article 59, the IC
concluded that the Union had not proven any harm resulting from
RHC's violation. Accordingly, the IC ordered RHC to provide the
Union with the requested information concerning the Hotel's
mortgage and loan. The IC "retain[ed] jurisdiction should the
Hotel fail to provide such information and/or the Union seeks
damages in connection with such violation." Id. at 51.

---

[1] In Award No. 2020-75, the IC awarded severance payments under Article 52 of
the IWA but, for reasons of equity, created an exception to the traditional
lump sum payment and permitted hotels to pay out severance benefits "over
time, provided . . . that an employer has laid off employees because of the
lack of occupancy occasioned by the Covld-19 crisis." ECF No. 26-5, at 38.

On November 24, 2021, two weeks after the Award was issued, RHC submitted a letter to the IC requesting reconsideration of the Award. Farelli Decl., ECF No. 36 ¶ 46. RHC also sent documents to the IC for ex parte review. Id. On January 10, 2022, RHC provided documents to the IC and counsel for the Union in furtherance of RHC's request for reconsideration. Id. ¶ 49. The Union contends that, notwithstanding RHC's January 2022 production, RHC has failed to comply fully with the Union's requests for information. See id. ¶ 52. At oral argument in this case, the parties represented that no hearing date has been set for RHC's request for reconsideration of the Award.

## II.

[A] federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law. . . . [The court's] obligation is limited to determining whether the arbitration proceedings and award met the minimum legal standards established by the Labor Management Relations Act, 29 U.S.C. § 141 et seq. (the 'LMRA').[2] [The court] must simply ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.' United Paperworks Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). These standards do not require perfection in arbitration awards. Rather, they dictate that even if an arbitrator makes mistakes of fact or law, [the court] may not disturb an award so long as he acted within the bounds of his bargained-for authority.

---

[2] This Court's footnote: The parties refer primarily to the NLRA in their briefs, as did the IC in the Award. In its legal analysis, the Court will instead refer to the LMRA, which "amended and encompasses the NLRA of 1935." Johnson v. D.M. Rothman Co., Inc., 861 F. Supp. 2d 326, 328 n.1 (S.D.N.Y. 2012) (quoting Pac. Mar. Ass'n v. Loc. 63, Int'l Longshoremen's and Warehousemen's Union, 198 F.3d 1078, 1079 n.2 (9th Cir. 1999)).

Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 532 (2d Cir. 2016) ("NFL").[3] Judicial deference is also appropriate with respect to arbitral remedies. See Misco, 484 U.S. at 38; United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960). "The LMRA establishes a federal policy of promoting industrial stabilization through the collective bargaining agreement, with particular emphasis on private arbitration of grievances. The Act embodies a clear preference for the private resolution of labor disputes without government intervention." NFL, 820 F.3d at 536.

### III.

### A.

RHC launches a broadside against the Award, but none of its arguments are persuasive. RHC first argues that the IC exceeded his authority by ignoring and contradicting the unambiguous plain language of the IWA. An arbitrator "exceeds the scope of its authority when it modifies, rewrites, or holds contrary to clear and unambiguous contractual language." Katz v. Feinberg, 167 F. Supp. 2d 556, 572 (S.D.N.Y. 2001), aff'd, 290 F.3d 95 (2d Cir. 2002).

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

RHC raises various arguments concerning the text of IWA Article 57, which on its face applies to hotels that have converted to residential use. RHC argues that this provision "does not reach hotels that have simply closed permanently and have not made a final decision regarding the future of the hotel." ECF No. 8, at 10-11. RHC also argues that the Hotel's employees were laid off due to the Hotel's closure, not due to a conversion as Article 57 requires. RHC further argues that Article 57 is inapplicable because the Roosevelt could still reopen, and Article 57 provides severance payments only for employees who suffer a "permanent" loss of employment. Id. at 12. Finally, RHC argues that the Award improperly directs the Hotel to pay Article 57 severance without requiring the employees to execute a release of their rights under the IWA, and also that the Award does not follow the severance calculations set out in Article 52(B). See id.

These arguments are insufficient to meet RHC's heavy burden because they ignore — and thus fail to cast doubt on — the IC's stated justification for imposing a modified version of Article 57 severance: namely, the imposition of a discovery sanction. The IC concluded that the Union was entitled to the information it had requested under the LMRA and Articles 57 and 59 of the IWA. See Award, at 49. The IC concluded that the Union was entitled to this information to ensure the Hotel's compliance

with Articles 57 and 59 and to allow the Union to bargain
effectively over the effects of the Hotel's conduct with respect
to the terms and conditions of the employees' employment. See
id. On the factual record before him, the IC determined that
RHC's discovery misconduct was willful. Id. at 50. The IC then
analogized to the authority of federal courts to impose
discovery sanctions, including a default judgment, against an
offending party. The IC expressly couched the award of modified
Article 57 severance in these terms.

The Court should confirm an arbitration award under the
LMRA "as long as the arbitrator is even arguably construing or
applying the contract and acting within the scope of his
authority." Misco, 484 U.S. at 38. Here, the IC concluded that
RHC had willfully violated its discovery obligations and had
failed to comply with the IC's prior order. The Award can be
read – indeed it is most naturally read – to apply the IWA
faithfully because, rather than making a final determination
that RHC violated Article 57, the IC imposed a discovery
sanction that was designed to vindicate the Union's entitlement
to information regarding potential future uses of the Hotel.
That the IC tethered the remedy to Article 57 – the contractual
provision under which the Union sought discovery – cuts in favor
of confirming the Award because it demonstrates that the Award
"draws its essence from the collective bargaining agreement and

is not merely the arbitrator's own brand of industrial justice."
NFL, 820 F.3d at 537; see also Chelsea Grand, LLC v. N.Y. Hotel
and Motel Trades Council, AFL-CIO, 729 F. App'x 33, 39 (2d Cir.
2018) (arbitrator has broad discretion in drafting remedial
orders and "its choice of remedies is subject to limited
review").

RHC argues that the weekly severance payments amount to a
"$33 million default judgment." ECF No. 29, at 6. But this
calculation is misleading because it is based on the cost of
full compliance with the severance payments contemplated by
Article 57. See ECF No. 8, at 8. The Award makes clear that the
Hotel will be released from its obligation to make weekly
severance payments once it has (1) obtained an award from the IC
that the Hotel has complied fully with the Union's requests for
information and rebutted the adverse inference that it has
converted or is converting to residential use, or (2) reopened
for transient use. Award, at 50-51; cf. Chelsea Grand, 729 F.
App'x at 38-39 (arbitrator permissibly established ex ante
position that the parties could modify through further
bargaining).

RHC points to nothing in the IWA that casts doubt on the
IC's authority to craft a discovery sanction by modifying the
relief authorized for a substantive violation of the relevant
IWA provision. And while RHC repeatedly frames the Award as a

final determination that the Hotel violated 57, that is not what the Award says. Accordingly, RHC has failed to show that the IC exceeded his authority under the IWA by ordering RHC to make weekly Article 57 severance payments.

RHC also complains that the Award violates the text of Article 59(B), which provides: "EMPLOYER shall make it a written material condition of any transaction of any kind whatsoever which transfers majority ownership, management or operational control of the Hotel . . . such that the party . . . assuming such majority ownership, management or operational control must assume and be bound in writing to this Agreement." RHC argues that, because "Article 59's unambiguous terms only apply where there has been a consummated 'transaction,'" ECF No. 8, at 14, the IC erred by drawing an adverse inference that RHC violated Article 59 based on undisclosed mortgage and loan documents. In Urban Commons 2 West LLC v. N.Y. Hotel & Motel Trades Council, AFL-CIO, No. 21-cv-4842, 2022 WL 826982 (S.D.N.Y. Mar. 18, 2022), Judge Torres recently concluded that a mortgage is a transaction covered under Article 59 of the IWA. Judge Torres concluded that the IC in the award at issue there "properly determined that a contingent transaction . . . falls within the broad language of Article 59(B)." Id. at *5–6. Moreover, "it is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained." NFL, 820 F.3d at 536.

The IC did not exceed his authority by concluding that the Union was entitled to mortgage and loan information to determine if a violation of Article 59 occurred. See U.S. Postal Serv. and Branch 564, Nat'l Ass'n of Letter Carriers (NALC), AFL-CIO, 363 NLRB 156, 159 (2015) (LMRA requires employer to produce requested information that "is potentially relevant to a determination as to the merits of a grievance or an evaluation as to whether a grievance should be pursued").[4]

RHC further argues that the IC exceeded his authority by relying on arbitrators' "inherent power to penalize a party's refusal to provide requested information relevant to an issue in a case by drawing an adverse inference against the offending party on such issue," Award, at 50. But the IC determined that RHC had willfully violated his prior discovery order, and none of the cases cited by RHC support the proposition that arbitrators lack the authority to impose discovery sanctions. To the contrary, OIC precedent establishes that arbitrators can impose such sanctions. See, e.g., Chelsea Grand, 729 F. App'x at 35–36 (describing prior awards imposing financial penalties for failure to produce requested information). The IC has broad authority in crafting a remedy. Id. at 39.

---

[4] Because the Union did not establish any harm resulting from RHC's "technical violation of Article 59," the IC did not award the Union any damages with respect to the Hotel's failure to provide the requested mortgage and loan information. Rather, the IC ordered the Hotel to produce the requested information. See Award, at 51.

Accordingly, RHC has failed to show that the IC exceeded his authority under the IWA in issuing the Award.

**B.**

RHC next argues that the Award violates public policy. Courts should not enforce an arbitral award that violates a "well defined and dominant" public policy, "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757, 766 (1983). "[T]he public policy ground for vacatur is extremely limited. A court's task in applying that principle is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, creates an explicit conflict with other laws and legal precedents and thus clearly violates an identifiable public policy." N.Y.C. and Vicinity Dist. Council of United Bhd. of Carpenters and Joiners of Am. v. Ass'n of Wall-Ceiling and Carpentry Indus. of N.Y., Inc., 826 F.3d 611, 618 (2d Cir. 2016).

RHC argues that the Award violates the "public policy of the [LMRA] prohibiting 'decisional bargaining.'" ECF No. 8, at 18. The Supreme Court held in First Nat'l Maintenance Corp. v. N.L.R.B., 452 U.S. 666, 681, 686 (1981) that an employer's obligation to bargain in good faith "with respect to wages,

14

hours, and other terms and conditions of employment," 29 U.S.C. § 158(a)(5), (d), does not require an employer to bargain over managerial decisions; employers are only required to bargain over the effects and impacts of those decisions.[5]

The Award does not mandate decisional bargaining. The IC explicitly stated that the Union was entitled to the documents it requested to ascertain compliance with the IWA and for "impact bargaining." Award, at 49; see also id. at 50 ("the Union's subpoenas and request for information . . . were relevant to impact bargaining and the Union's investigation of the Hotel's related and affiliated entities and violations of Article 57 and 59 of the IWA"). The Award does not require the Hotel to bargain with the Union about a decision to convert to residential use or a decision to take out a mortgage; the Award merely requires the Hotel to produce information that will allow the Union to bargain over the effects of those decisions and to ensure compliance with the IWA. RHC points to no authority supporting the proposition that impact bargaining can only occur

---

[5] The Union correctly points out that RHC misstates the holding of First National Maintenance. First National Maintenance, and the other cases cited by RHC, do not "prohibit[] decisional bargaining," ECF No. 8, at 19. Rather, First National Maintenance held that decisional bargaining is permissive, rather than mandatory, under the LMRA. See 452 U.S. at 681, 686. The LMRA only prohibits "imposition of permissive subjects of bargaining without the consent of the other party." Brooklyn Downtown Hotel LLC v. N.Y. Hotel and Motel Trades Council, AFL-CIO, No. 15-cv-1578, 2017 WL 1192179, at *5 (S.D.N.Y. Mar. 29, 2017) (emphasis added). In any event, this distinction does not affect this case because the Award does not mandate decisional bargaining.

after a final managerial decision has been made. Accordingly, the Award does not violate any public policy.

**C.**

RHC next argues that the Award should be vacated "because it manifestly disregarded the terms of the IWA and fundamental principles of contract and labor law." ECF No. 8, at 20. "An arbitral decision rendered under the [LMRA] may be vacated if the arbitrator has exhibited a manifest disregard of law. Judicial inquiry under the manifest disregard standard is extremely limited." Chelsea Grand, 729 F. App'x at 36. "An arbitrator commits manifest disregard of the law when the governing law alleged to have been ignored by the arbitrator[] was well defined, explicit, and clearly applicable, and the arbitrator appreciated the existence of a clearly governing legal principle but decided to ignore or pay no attention to it." Id.

RHC repeats its argument that the IC disregarded "the governing law prohibiting 'decisional bargaining.'" ECF No. 8, at 21. But the Award does not require decisional bargaining. Moreover, the Award incorporates verbatim RHC's legal contentions surrounding the issue of decisional bargaining. See Award, at 43-47. Rather than ignoring the distinction between decisional bargaining and impact bargaining, the IC considered the issue and expressly concluded that the Union was entitled to

16

the information it had requested for purposes of impact
bargaining. See id. at 49-50.

RHC also argues that the Award "shows a manifest disregard
of the law's requirement of a showing of relevance before
documents need to be produced." ECF No. 8, at 21. This argument
similarly ignores the plain language of the Award, in which the
IC concluded that the Union's subpoenas and requests for
information "were relevant to impact bargaining and the Union's
investigation of the Hotel's related and affiliated entities and
violations of Article 57 and 59 of the IWA." Award, at 50. The
IC also concluded that the Hotel acted "egregious[ly]" by not
producing to the Union specific documents that were "clearly
responsive" to the Union's subpoenas and requests for
information. Id. at 49. The existence of these documents was
revealed by the testimony of the Hotel's ownership
representatives before the OIC. See id. Accordingly, the IC did
not ignore the issue of relevance. Rather, the IC concluded that
the Hotel willfully failed to produce relevant documents to the
Union.

RHC fails to show that the IC manifestly disregarded any
clearly governing legal principle.

**D.**

RHC next argues that the Award is "arbitrary and
capricious." ECF No. 8, at 22. RHC cites only one out-of-circuit

case supporting this ground for vacatur. See Lifecare Int'l, Inc. v. CD Med., Inc., 68 F.3d 429, 435 (11th Cir. 1995), modified and supplemented, 85 F.3d 519 (11th Cir. 1996). RHC points to no cases from within this Circuit applying this standard to labor arbitrations.

In any event, RHC's arguments in this respect are without merit. For example, RHC argues that the Award is "unsupported by the record evidence," ECF No. 8, at 23, but the IC's factual findings "are generally not open to judicial challenge," and the Court is required to "accept the facts as the arbitrator found them." Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 213 (2d Cir. 2002). The IC found that RHC acted "deliberate[ly]" and "willful[ly]" in failing to produce documents responsive to the Union's subpoenas and requests for information relevant to impact bargaining and the Union's investigation of potential violations of the IWA. Award, at 50. This Court is required to accept the IC's findings and it is not for the Court to second-guess them. See NFL, 820 F.3d at 536 ("Because it is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained, courts are not permitted to substitute their own.").[6]

---

[6] RHC's claim that the IC "didn't make any factual determinations," ECF No. 8, at 24, is plainly not true. The IC found that RHC willfully, deliberately, and egregiously failed to comply with the IC's prior order to produce relevant evidence to the Union. See Award, at 49-51.

RHC's remaining arguments are also without merit. It was plainly reasonable for the IC to determine that RHC's "half-hearted offer to produce some of the documents at this late date," Award, at 50, did not cure its willful discovery violations. RHC's argument that the Award "brings about an absurd result that is incompatible with common sense and which thwarts the goals of collective bargaining," ECF No. 8, at 25, also fails. The IC used his industry expertise and his knowledge of the parties' relationship to craft an appropriate discovery sanction. Indeed, it is RHC's request – that this Court second-guess the IC's remedy and the IC's view of the facts – that would thwart the goals of collective bargaining.

**E.**

RHC argues in response to the Union's cross-petition that the Award should not be confirmed because it is not final. This argument fundamentally conflicts with RHC's petition to vacate the Award because "[o]nly awards that are final are subject to judicial review." Sperry Int'l Trade, Inc. v. Gov't of Israel, 532 F. Supp. 901, 906 (S.D.N.Y. 1982), aff'd, 689 F.2d 301 (2d Cir. 1982).

In any event, the Award is final. "[A]n arbitration award, to be final, must resolve all the issues submitted to arbitration, and [] it must resolve them definitively enough so that the rights and obligations of the two parties, with respect

to the issues submitted, do not stand in need of further adjudication." Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 157 F.3d 174, 176 (2d Cir. 1998) (emphasis omitted). The issue submitted to arbitration in this case was whether RHC violated its discovery obligations to the Union under the LMRA and IWA. The IC concluded that RHC willfully violated its discovery obligations and crafted an appropriate remedy. Moreover, Article 26(A) of the IWA provides that decisions of the OIC "shall be final." See also Sperry Int'l Trade, 532 F. Supp. at 909 (because the parties' contract provided that awards "shall be deemed final," the court rejected the argument that the award at issue was not final).

In arguing that the Award it seeks to vacate is not final, RHC emphasizes that the Union "conceded" that the Award did not make a "final determination of liability" with respect to any substantive violations of the IWA. ECF No. 29, at 26. This argument relies on a misunderstanding of the Award that permeates RHC's papers: while RHC repeatedly characterizes the Award as having made a substantive determination that RHC violated Articles 57 and 59 of the IWA, the Award in fact: (1) concluded that RHC had willfully violated its discovery obligations, (2) drew an adverse inference against RHC as a sanction, and (3) crafted a remedy based on the substantive IWA provisions at issue. Accordingly, the Award definitively

resolved the discovery issues that were submitted to
arbitration.

RHC also argues that the Award is not final because it
"envisions further adjudication" and because the parties dispute
what documents need to be produced to rebut the adverse
inference drawn by the IC. Id. This argument fails because the
Award definitively determined that RHC had violated its
discovery obligations as of the date of the Award. The Award
only envisions further adjudication to the extent that RHC
complies with its discovery obligations and seeks to cease
making weekly severance payments. See Award, at 50-51. Thus "the
rights and obligations of the two parties, with respect to the
issues submitted, do not stand in need of further adjudication."
Rocket Jewelry Box, 157 F.3d at 176. RHC has no ability to
modify the determination that it violated its discovery
obligations as of the date of the Award. Rather, the Award
permits RHC to modify the remedy on a going-forward basis if it
cures its discovery misconduct and rebuts the adverse inference
that the IC drew (or if the Hotel reopens for transient use).
See Award, at 50-51. That the Award's remedy may be modified in
light of the parties' future dealings does not render the Award
non-final. Cf. Chelsea Grand, 729 F. App'x at 38-39 (award
established temporary contract terms that the parties could
modify through the collective-bargaining process); Offshore

Expl. and Prod., LLC v. Morgan Stanley Priv. Bank, N.A., 626 F.
App'x 303, 307 (2d Cir. 2015) (award final even though it
"resolve[d] the parties' rights only for an interim period and
[left] open the possibility that the amount of indemnification
[would] be modified once [another dispute] [was] resolved").

Lastly, the Award must be deemed final because "the very
purpose of the arbitrator['s] award . . . would be frustrated if
the parties' ability to enforce it were left until after a
complete resolution of the merits." S. Seas Navigation Ltd. of
Monrovia v. Petroleos Mexicanos of Mexico City, 606 F. Supp.
692, 694-95 (S.D.N.Y. 1985) (Weinfeld, J.). The IC designed a
remedy to encourage RHC to fulfill its discovery obligations so
that the parties could engage in impact bargaining and the Union
could investigate potential violations of the IWA. The Award
should be confirmed now if it is to serve its intended purpose.
In other words, the Award "is an end in itself, for its very
purpose is to clarify the parties' rights in the 'interim'
period pending a final decision on the merits. The only
meaningful point at which such an award may be enforced is when
it is made, rather than after the arbitrator[] [has] completely
concluded consideration of all the parties' claims." Id. at 694.

### F.

RHC's challenges to the Award fail for the reasons
explained above. The IC acted within the scope of his authority

under the IWA, the Award does not violate any well defined public policy, and there was no manifest disregard of the law.[7] Accordingly, the Court **denies** RHC's petition to vacate the Award and **grants** the Union's petition to confirm the Award. See N.Y.C. and Vicinity, 826 F.3d at 618; NFL, 820 F.3d at 536–37; Urban Commons 2 West, 2022 WL 826982, at *7.

**G.**

Finally, the parties raise the issue of interest. The Union argues that the Court should award the Union pre-judgment interest on the Award. "There is a presumption in favor of prejudgment interest for arbitration awards." N.Y. Hotel & Motel Trades Council, AFL-CIO v. Chelsea Grand LLC, No. 17-cv-4444, 2018 WL 4284046, at *6 (S.D.N.Y. Sept. 6, 2018). "The decision whether to grant prejudgment interest in arbitration confirmations is left to the discretion of the district court." Serv. Emps. Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs., LLC, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004). "[D]istrict courts within the Second Circuit have exercised their discretion to award prejudgment interest when confirming arbitration awards under collective bargaining agreements pursuant to § 301 of the LMRA, when the CBAs indicated that an arbitration award was 'final and binding.'" Id.

---

[7] RHC's arguments that the Award should be vacated because it is arbitrary and capricious also fail for the reasons explained above.

In this case, although the Award was "final and binding" upon the parties when it was issued pursuant to Article 26(A) of the IWA, the total amount of severance payments owed by RHC is yet to be determined and the IC may ultimately address the issue of pre-judgment interest in the context of any subsequent award. Accordingly, the Court will not decide the issue of pre-judgment interest at this time.

### CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the reasons explained above, RHC's petition to vacate the Award is **denied** and the Union's petition to confirm the Award is **granted**. The Clerk is directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **June 2, 2022**

                                   _____
                                         John G. Koeltl
                                   United States District Judge

24